**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.   **MICHAEL W. BARRETT, an individual,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 18-cv-00348-JED-FHM |
| 1.   **TULSA WELDING SCHOOL, INC.,** | ) **JURY TRIAL DEMANDED** |
|      a Domestic For Profit Business Corporation, | ) **ATTORNEY'S LIEN CLAIMED** |
| **Defendant.** | ) |

**COMPLAINT**

**COMES NOW** Plaintiff, Michael W. Barrett, ("Plaintiff"), through undersigned counsel, and hereby submits the following Complaint against Defendant Tulsa Welding School, Inc., ("Defendant") and states and alleges as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(4) and 1367(a). Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state law claims alleged herein because they are so related to the federal claims that they form part of the same case or controversy at issue herein.

2. This action arises under 29 U.S.C. § 621, *et seq.*, 42 U.S.C. § 2000e, *et seq.*, and the laws of the State of Oklahoma.

3. Declaratory and equitable relief is sought pursuant to 28 U.S.C. §2201, §2202, 29 U.S.C. § 621, *et seq.*, 42 U.S.C. § 2000e, *et seq.*, and the laws of the State of Oklahoma. Compensatory damages are available under 42 U.S.C. § 2000e, *et seq.*, and the supplemental state claims.

4    .Costs and attorney's fees may be awarded pursuant to 29 U.S.C. § 621, *et seq.*, 42 U.S.C. §

1

2000e, *et seq.,* 25 O.S. § 1302, et. seq., and Rule 54 of the Federal Rules of Civil Procedure.

5. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. §1391(b), because the claims herein arose in this judicial district.

## PARTIES AND STATUTORY PREREQUISITES

6. Mr. Barrett was at all times since his employment, domiciled in and a citizen of the State of Oklahoma, and is a male over forty years of age. Mr. Barrett is presently domiciled in and a resident of Claremore, Oklahoma.

7. Plaintiff is an employee as defined by Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C.§§ 2000e, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and the Oklahoma Anti-Discrimination Act, 25 O.S. § 1302, et. seq.

8. Defendant was and is now a Domestic for Profit Business Corporation organized under the laws of the State of Oklahoma, where Mr. Barrett was employed during the relevant periods.

9. Defendant is an employer within the meaning of Title VII, the ADEA, and the Oklahoma Anti-Discrimination Act.

10. In conformance with statutory prerequisites, Mr. Barrett signed and then submitted his intake questionnaire and pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC") on or about February 23, 2017. The EEOC has a Work Sharing Agreement with the State of Oklahoma, OAG OCRE, so that the EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706 (c) and (e) (1) of Title VII.

11. Subsequently, Mr. Barrett signed a Charge of Discrimination prepared by and submitted to

the EEOC, on or about July 19, 2017.   The EEOC issued a Right to Sue letter on or about April 12, 2018, and received thereafter. Mr. Barrett has therefore timely filed this action within the statutory time period.

**FIRST CLAIM FOR RELIEF**
**(AGE DISCRIMINATION IN VIOLATION OF THE ADEA)**

12. Plaintiff alleges that he was subjected to age discrimination in violation of the ADEA.

13. Plaintiff Barrett is a covered individual by the ADEA and is over the age of 40.

14. Barrett was employed by Tulsa Welding School beginning on or about October 2016, in the position of Academic Dean.

15. During Barrett's tenure, he was treated differently than his younger, female co-workers, and made to feel inferior by Defendant's upper management.

16. Sue Kuhl, President of Tulsa Welding School, would often send Barrett to her office during meetings he was supposed to be in attendance at as the Academic Dean, to pick up items, as her errand boy, not as a skilled educated administrator. She would send him to run errands, to get her lunch or to get her coffee. This was despite the fact that assistants were available to run these errands.

17. Kuhl told Barrett that he was not her choice for the Academic Dean position, and that he had a lot to prove.

18. Kuhl asked Barrett on more than one occasion how old he was, and how many years did he see himself working before retirement.

19. Kuhl, during an executive meeting, introduced Barrett to staff by referring to his age, causing the staff to laugh. Barrett found it demeaning and offensive.

20. No other female or younger employee was treated in this same manner.

21. Barrett was terminated on or about February 14, 2017 during a meeting in which only three younger female employees and Barrett were present. Barrett was not permitted to provide any explanation, but was told that the decision to fire him had already been made.

22. Barrett had no prior disciplinary action against him. He was told by Kuhn on the date of his firing, prior to the termination meeting, that he was doing a great job.

23. No reason was ever given for the demeaning and degrading manner of treatment of Barrett by Tulsa Welding School.

24. Barrett was told by Kuhn that he was fired because he left work at approximately 3:40 p.m. on February 10, 2017.

25. In fact, Barrett was notified on February 10, 2017, that the interviews for which he had stayed that Friday afternoon, were cancelled.

26. Barrett left the premises late that afternoon, as was the prerogative of his position, as he was not required to stay until 5:00 p.m. under the circumstances.

27. At no point in his employment with Tulsa Welding School was Barrett told he must stay in the office until 5:00 p.m.

28. Barrett had arrived at work at approximately 7:00 a.m. that morning, and had worked over forty-eight hours that week, as was his custom. He did not take a lunch break on that date.

29. The lead instructor, who was in charge of operations for the evening shift, was present when Barrett left.

30. Barrett had his work phone with him, and he would have returned to campus if needed as he had on other prior occasions, but he was never called by anyone with Tulsa Welding on that date regarding any matter.

31. Barrett, when later asked by Kuhn about his departure on that date, advised her he was not sure of the exact time he left.

32. No corrective action was offered or taken, but instead Barrett was fired, without any opportunity to respond to the statements made against him. This was inconsistent with Tulsa Welding School's policies and procedures, as applied to other female and/or younger employees.

33. The conduct complained of was directed at the Plaintiff because of his age. Kuhl never made any such statements about age or demeaned younger employees in this same manner, or treat younger employees in this same manner.

34. Plaintiff is a member of a protected class, to wit: over forty years of age.

35. The conduct complained of was sufficiently severe or pervasive to alter the terms and conditions of Mr. Barrett's employment by creating an abusive working environment.

36. Mr. Barrett asserts that he was discriminated against based upon his age, over forty, and gender, Male, when he was fired on February 14, 2017, when younger female comparators were not terminated for similar alleged offenses.

37. The reason given by Defendant for Barrett's termination was a pretext to terminate Barrett because of his age.

38. Barrett was subjected to unlawful hostility because of his age.

39. Barrett was subjected to unlawful and disparate treatment as to the alleged basis for his

termination.

40. Barrett was discriminated against because of his age, in violation of the ADEA.

41. Prior to his discharge, Mr. Barrett adequately and competently performed all essential functions of his job, and Mr. Barrett had never been disciplined, reprimanded or otherwise told his job performance needed to improve.

42. Defendant Tulsa Welding School did discriminate against Plaintiff Barrett on account of his age in respect to his terms of compensation; and/or a condition or privilege of employment.

43. By and through, but not limited to, the events described above, Plaintiff Barrett's terms and conditions of employment were adversely affected, and a hostile work environment was created, due to the on-going age discrimination directed towards him.

44. In particular, but not limited to, hostile work environment discrimination due to his age and discipline meted out to the Plaintiff Barrett as opposed to similarly situated younger employees.

45. As a direct and proximate result of said actions by Defendant Tulsa Welding School, Plaintiff Barrett has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

46. Defendant Tulsa Welding School's actions were willful and done with reckless indifference to Plaintiff Barrett's rights, thus warranting the award of damages to him.

**WHEREFORE**, Plaintiff, Michael W. Barrett, prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; liquidated damages; costs and expenses, including reasonable attorney's fees

as provided for by applicable law; reinstatement, or front pay in lieu thereof; an assessment of damages to compensate for any tax consequences of this judgment; prejudgment interest and for any such other legal or equitable relief this Honorable Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (SEX DISCRIMINATION IN VIOLATION OF TITLE VII)

47. Plaintiff alleges that he was subjected to a discrimination based upon his sex in violation of the Title VII of the Civil Rights Act of 1964.

48. Barrett was employed by Tulsa Welding School beginning on or about October 2016, in the position of Academic Dean.

49. During Barrett's tenure, he was treated differently than his younger, female co-workers, and made to feel inferior by Defendant's upper management.

50. Sue Kuhl, President of Tulsa Welding School, would often send Barrett to her office during meetings he was supposed to be in attendance at as the Academic Dean, to pick up items, as her errand boy, not as a skilled educated administrator. She would send him to run errands, to get her lunch or to get her coffee. This was despite the fact that assistants were available to run these errands.

51. Kuhl told Barrett that he was not her choice for the Academic Dean position, and that he had a lot to prove.

52. No other female or younger employee was treated in this same manner.

53. Barrett was terminated on or about February 14, 2017 during a meeting in which only three younger female employees and Barrett were present. Barrett was not permitted to provide any explanation, but was told that the decision to fire him had already been made.

54. Barrett had no prior disciplinary action against him. He was told by Kuhn on the date of his firing, prior to the termination meeting, that he was doing a great job.

55. No reason was ever given for the demeaning and degrading manner of treatment of Barrett by Tulsa Welding School.

56. Barrett was told by Kuhn that he was fired because he left work at approximately 3:40 p.m. on February 10, 2017.

57. In fact, Barrett was notified on February 10, 2017, that the interviews for which he had stayed that Friday afternoon, were cancelled.

58. Barrett left the premises late that afternoon, as was the prerogative of his position, as he was not required to stay until 5:00 p.m. under the circumstances.

59. At no point in his employment with Tulsa Welding School was Barrett told he must stay in the office until 5:00 p.m.

60. Barrett had arrived at work at approximately 7:00 a.m. that morning, and had worked over forty-eight hours that week, as was his custom. He did not take a lunch break on that date.

61. The lead instructor, who was in charge of operations for the evening shift, was present when Barrett left.

62. Barrett had his work phone with him, and he would have returned to campus if needed as he had on other prior occasions, but he was never called by anyone with Tulsa Welding on that date regarding any matter.

63. Barrett, when later asked by Kuhn about his departure on that date, advised her he was not sure of the exact time he left.

64. No corrective action was offered or taken, but instead Barrett was fired, without any

opportunity to respond to the statements made against him. This was inconsistent with Tulsa Welding School's policies and procedures, as applied to other female and/or younger employees.

65. Barrett was warned by other male employees that the women in upper management would not permit a male to remain in the Academic Dean position for long.

66. By and through, but not limited to, the events described above, Plaintiff's terms and conditions of employment were adversely affected, and a hostile work environment was created, due to the on-going sexual discrimination directed towards him.

67. By and through, but not limited to, the actions described above, Defendant has violated Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C.§§ 2000e, *et seq*.

68. As a direct and proximate result of said actions by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

69. Defendant's actions were willful and done with reckless indifference to Plaintiff's rights, thus warranting the punitive award of damages to him.

70. Plaintiff has been injured by this sexual discrimination, and is entitled to compensatory damages and any other damages allowed under Title VII of the Civil Rights Act of 1964 and 1991.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.000); costs and

expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (SEX AND AGE DISCRIMINATION IN VIOLATION OF
### OKLAHOMA ANTI-DISCRIMINATION ACT)

71. Plaintiff alleges that he was subjected to a hostile work environment based upon his sex and age in violation of the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101 et seq. (OADA). OADA claims are evaluated using the same liability standards as claims under Title VII and the ADEA.

72. That Plaintiff is a member of a protected class, to wit: male over the age of forty years.

73. That Oklahoma law prohibits sex discrimination and age discrimination (as set forth in the OADA, 25 O.S. § 1302, et. seq.), and permits an aggrieved employee to bring a claim against an employer for permitting sex discrimination and/ or age discrimination.

74. Barrett was employed by Tulsa Welding School beginning on or about October 2016, in the position of Academic Dean.

75. During Barrett's tenure, he was treated differently than his younger, female co-workers, and made to feel inferior by Defendant's upper management.

76. Sue Kuhl, President of Tulsa Welding School, would often send Barrett to her office during meetings he was supposed to be in attendance at as the Academic Dean, to pick up items, as her errand boy, not as a skilled educated administrator. She would send him to run errands, to get her lunch or to get her coffee. This was despite the fact that assistants were available to run these errands.

77. Kuhl told Barrett that he was not her choice for the Academic Dean position, and that he had a lot to prove.

78. Kuhl asked Barrett on more than one occasion how old he was, and how many years did he see himself working before retirement.

79. Kuhl, during an executive meeting, introduced Barrett to staff by referring to his age, causing the staff to laugh. Barrett found it demeaning and offensive.

80. No other female or younger employee was treated in this same manner.

81. Barrett was terminated on or about February 14, 2017 during a meeting in which only three younger female employees and Barrett were present. Barrett was not permitted to provide any explanation, but was told that the decision to fire him had already been made.

82. Barrett had no prior disciplinary action against him. He was told by Kuhn on the date of his firing, prior to the termination meeting, that he was doing a great job.

83. No reason was ever given for the demeaning and degrading manner of treatment of Barrett by Tulsa Welding School.

84. Barrett was told by Kuhn that he was fired because he left work at approximately 3:40 p.m. on February 10, 2017.

85. In fact, Barrett was notified on February 10, 2017, that the interviews for which he had stayed that Friday afternoon, were cancelled.

86. Barrett left the premises late that afternoon, as was the prerogative of his position, as he was not required to stay until 5:00 p.m. under the circumstances.

87. At no point in his employment with Tulsa Welding School was Barrett told he must stay in the office until 5:00 p.m.

88. Barrett had arrived at work at approximately 7:00 a.m. that morning, and had worked over forty-eight hours that week, as was his custom. He did not take a lunch break on that date.

89. The lead instructor, who was in charge of operations for the evening shift, was present when Barrett left.

90. Barrett had his work phone with him, and he would have returned to campus if needed as he had on other prior occasions, but he was never called by anyone with Tulsa Welding on that date regarding any matter.

91. Barrett, when later asked by Kuhn about his departure on that date, advised her he was not sure of the exact time he left.

92. No corrective action was offered or taken, but instead Barrett was fired, without any opportunity to respond to the statements made against him. This was inconsistent with Tulsa Welding School's policies and procedures, as applied to other female and/or younger employees.

93. Barrett was warned by other male employees that the women in upper management would not permit a male to remain in the Academic Dean position for long.

94. The conduct complained of was directed at the Plaintiff because of his age and/or sex. Kuhl never made any such statements about age or demeaned younger, female employees in this same manner, or treat younger, female employees in this same manner.

95. Plaintiff is a member of a protected class, to wit: male over forty years of age.

96. The conduct complained of was sufficiently severe or pervasive to alter the terms and conditions of Mr. Barrett's employment by creating an abusive working environment.

97. Mr. Barrett asserts that he was discriminated against based upon his age, over forty, and

gender, Male, when he was fired on February 14, 2017, when younger female comparators were not terminated for similar alleged offenses.

98. The reason given by Defendant for Barrett's termination was a pretext to terminate Barrett because of his age and/or sex.

99. Barrett was subjected to unlawful and disparate treatment as to the alleged basis for his termination.

100. Prior to his discharge, Mr. Barrett adequately and competently performed all essential functions of his job, and Mr. Barrett had never been disciplined, reprimanded or otherwise told his job performance needed to improve.

101. Defendant Tulsa Welding School did discriminate against Plaintiff Barrett on account of his age and/or sex in respect to his terms of compensation; and/or a condition or privilege of employment.

102. By and through, but not limited to, the events described above, Plaintiff Barrett's terms and conditions of employment were adversely affected, and a hostile work environment was created, due to the on-going age and/or sex discrimination directed towards him.

106. As a direct and proximate result of said actions by Defendant Tulsa Welding School, Plaintiff Barrett has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

107. Defendant Tulsa Welding School's actions were willful and done with reckless indifference to Plaintiff Barrett's rights, thus warranting the award of damages to him.

108. That the conduct complained of constitutes illegal sex and age in violation of the OADA, 25 O.S. § 1302, et. seq.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; compensatory, liquidated and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### (BREACH OF IMPLIED CONTRACT, DETRIMENTAL RELIANCE CLAIM)

109. Plaintiff Barrett alleges that Tulsa Welding School breached its implied contract with Plaintiff, which Plaintiff detrimentally relied, by terminating him, without cause.

110. Barrett was induced to move from his out-of-state home to Oklahoma, upon promises of a lengthy stable employment position. The representations by Tulsa Welding School regarding the length of his employment continued even after he began his employment.

111. Barrett's relocation was a necessary act in accepting Tulsa Welding School's employment offer, and thus was contemplated by Tulsa Welding School when it made its employment offer to Barrett.

112. Tulsa Welding School's offer of employment was a promise designed to induce Barrett's reliance upon the offer.

113. By failing to adhere to its own written provisions governing employment relations, as provided in its Personnel Policies & Procedures manual, as well as oral representations and

offers made to Plaintiff, which Plaintiff accepted and relied on to his detriment, Defendant has breached its express and implied contractual obligations to this Plaintiff, and the doctrine of promissory estoppel.

114. As a direct and proximate result of said actions by Defendant, as well as its breach of obligations referenced herein, Plaintiff has suffered, is now suffering, and will continue to suffer, lost wages, lost benefits, future wages and benefit, promotional opportunities, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, physical injury as a result of intentional infliction of emotional distress, physical pain, humiliation, and other non-pecuniary losses.

**WHEREFORE**, Plaintiff, Michael W. Barrett, prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; liquidated and/or compensatory damages, including emotional distress, mental anguish, and humiliation; costs and expenses, including reasonable attorney's fees as provided for by applicable law; reinstatement, or front pay in lieu thereof; an assessment of damages to compensate for any tax consequences of this judgment; prejudgment interest and for any such other legal or equitable relief this Honorable Court deems just and proper.

Respectfully Submitted,

s/ Terry A. Hall
**Terry A. Hall, OBA # 10668**
**Law Office of Terry A. Hall**
PO Box 616
Choctaw, OK 73020
thall@okhnhlaw.com
(405) 708-7525
(405) 415-9095 fax
**Attorney for Claimant**